No. 19,332.

THE STATE OF KANSAS, *Appellee*, v. JUSTUS B. LINDER-HOLM, *Appellant*.

SYLLABUS BY THE COURT.

INSANITY—*Action to Open Judgment in Lunacy Proceedings—Dismissed—No Error.* Examination of a petition to open a judgment in a lunacy proceeding and consideration of pertinent and incidental facts, held to show that no error was committed in dismissing the proceedings.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion filed June 12, 1915. Affirmed.

*John F. Hanson,* of Lindsborg, for the appellant.

*F. O. Johnson,* of McPherson, and *Gust Nyquist,* county attorney, for the appellee.

*Justus B. Linderholm,* of Topeka, *pro se.*

The opinion of the court was delivered by

DAWSON, J.: This appeal relates to a dismissal by the district court of some proceedings instituted by John F. Hanson and his client, Justus B. Linderholm, in the district court of McPherson county, in the nature of a sequel to a case which has been here before several times. (*The State v. Linderholm,* 84 Kan. 603, 114 Pac. 857; *The State v. Linderholm,* 84 Kan. 892, 114 Pac. 857; *The State v. Linderholm,* 90 Kan. 489, 135 Pac. 564.) A reading of the decisions and opinions there recorded is necessary to get the import of this appeal.

Some light on the historical aspects of this case can also be gleaned from *Linderholm v. Ekblad,* 92 Kan. 9, 139 Pac. 1015. From those and the documents filed in this appeal it appears that about six years ago Justus B. Linderholm was adjudged insane in a lunacy proceeding in the probate court of McPherson county. On appeal to the district court the same conclusion was reached. The case was then appealed to this court, and the errors occurring at the trial which counsel for appellant deemed worthy of consideration were presented here. Any errors which may have occurred in the district court but not brought to that court's attention on a motion for a new trial, and not then brought here and assigned and presented were waived. We note that in that appeal competent counsel, one a lawyer of fifty years' experience, represented the appellant. (*The State v. Linderholm,* 84 Kan. 603, 114 Pac. 857.)

It ought, therefore, to be obvious what disposition should be made of this appeal; but the writer has been advised by the court that owing to the unfortunate situation of this appellant, and the peculiar crotchets

of his counsel, a toleration and forbearance have been exercised towards them both which ordinary litigants and counsel could not expect. With this policy towards Mr. Linderholm the writer is genuinely in accord, and even the crude pleadings and briefs of his counsel may be patiently and considerately dealt with; but the writer finds in the pleadings, correspondence and documents of counsel a persistent insolence and effrontery towards this court and the individual justices which are wholly inexcusable and which must not be repeated. The very least that this court can do with such contumacious and insulting documents is to strike them from the files and consign them to the waste-basket.

Turning now to the particular matter in hand, this proceeding is founded on a petition to vacate a judgment alleging:

"That in the verdict of the jury and all orders made and rendition of judgment herein, if any there be, which was supposed to be made on March 19, 1909 but which did not become absolute until after hearing in the supreme court of the State of Kansas where opinion of affirmance was handed down April 8th 1911 and opinion on motion for a rehearing being at a later date and mandate thereafter, such verdict, orders and supposed judgment were irregular and for some purposes wholly void and by reason of such supposed judgment respondent appears to be under some disability to this date, but the same is not now a valid disability for the reason that he was kidnapped and taken to the Topeka State Hospital and was there released from all restraint on June 1st 1911 and does not now have nor ever did have any valid guardian because said respondent did not have his day in court in the appointment of any one who may claim to be his guardian.

"Respondent further alleges and says that fraud was practiced by the successful party in the obtaining of this supposed judgment in this to wit: that at the trial of said cause, George Allison, who was the then duly elected, qualified and acting County Attorney, did, for himself and in the interest of numerous parties conspiring with him, including the trial Judge as a conspirator, in his plea to the jury argue to them that they

need have no fear that the said Justus B. Linderholm would be confined in an asylum if they found him insane, but that the state wished to have some control over him and he would only be committed to his friends, which statement was not only improper as a legal ground for finding insanity, but was made with the purpose and intent of deceiving the jury and in accordance with such deception the said George Allison together with numerous conspirators failed to have any order of committment to his friends made, but on the contrary, though irregular and without jurisdiction of the cause or person at the time and without any hearing, did, in the course of about six weeks in another court, to wit the probate court of McPherson County, Kansas, procure an order of committment of respondent to the Topeka State Hospital for the insane; that it is probable from the meager and disputed evidence of insanity that the jury would not have found insanity if this deception had not been practiced, as said Justus B. Linderholm was not then insane nor is now insane and his condition remains unchanged until this day and there was a total failure of the evidence to show any insanity that needed treatment in a hospital for the insane nor to show that respondent was dangerous to himself or others or property; that the probate judge who made the order of committment under which the respondent was kidnapped and taken to said asylum did not sit on this hearing of the cause and was not in a position without further hearing to say what order of committment should be made and no legal and binding order of committment of any kind has been made to this day by any court; that respondent adopts the third cause of action excepting adopted parts in so far as it may constitute a fraud.

### "SECOND CAUSE OF ACTION.

"Respondent further alleges and says that he adopts the first paragraph of the first cause of action as though fully set out herein, and further alleges and says; that from unavoidable casualty and misfortune he was prevented from properly defending said cause to wit: That he adopts the balance of the first cause of action as though fully set out herein in so far as that may tend to establish unavoidable casualty and misfortune whereby he could not properly defend his cause; that further casualty consisted in the physician who sat on

the jury as a special juror in answering question as to his qualification as a juror mislead said respondent by stating that he was not prejudiced against said respondent nor biased on account of the nature of the charge and had not heard anything in particular about the cause nor expressed an opinion on the merits of the cause when later facts indicate that those answers were all false as appears from the circumstance that after being discharged by the court from further service as a juror he passed near the respondent and acting as though he was provoked stated in substance that it was disgusting to be detained as a juror on such a plain case of insanity when the facts were that four physicians had testified that respondent was not insane and some of them positively and the two physicians testifying for the state that there was insanity were not required to state what the delutions were that they claimed he had, and cross examination was not permitted in any other respects, which made the questions of insanity at least very doubtful to fair minded men and physicians who heard the case and looked into it, but the said juror took a positive uncompromising stand notwithstanding said conditions; that the cause had been tried in the probate court of said town and county about three months previously and had been generally discussed by physicians at McPherson, Kansas, and from general statements made to respondent's counsel, John F. Hanson, a short time after the trial at McPherson, Kansas, it appears further that he had gained considerable knowledge of the case before the trial; that respondent's counsel believes that he can secure witnesses at the trial that will substantiate these facts more fully; that the respondent's condition as to sanity is the same now as at the time of the trial and he is not now nor was then insane so as to require his committment in a hospital for the insane for any reason.

"THIRD CAUSE OF ACTION.

"Respondent further alleges and says: that he adopts the first paragraph of the first cause of action as though fully set out herein and further alleges and says: that in the entering of said orders and judgment, if any valid entries there be, that they were obtained and entered by mistake of the clerk or by irregularity and the same consist in this to wit: That there

43—95 Kan.

never was any finding of insanity made or announced in the said district court after the receipt of the verdict of the jury; that nothing was done after that except hearing and overruling motion for new trial, taking time to prepare and make a case-made and upon motion being made by respondent to stay all proceedings without bond until case was made and signed the court took the same under advisement and no further step to perfect judgment has been taken since that time to this day, and what appears in a journal entry filed shortly thereafter is wholly irregular and such journal entry was not approved in court nor was it approved at chambers with the knowledge of the respondent nor did he have any opportunity to appear and be heard on the same; that the said respondent is not now nor was at the time of the trial insane.

### "FOURTH CAUSE OF ACTION.

"Respondent adopts first paragraph of first cause of action and further says that all the supposed judgments herein are wholly void for the reasons that no findings of insanity has been made, on the verdict of the jury, by the court for the reason as set out in the foregoing third cause of action and the verdict of the jury has now become obsolete for the basing of any findings thereon on account of the great lapse of time; that the said respondent is not now insane nor was at the time of said trial and proceedings.

### "FIFTH CAUSE OF ACTION.

"Respondent further adopts first paragraph of first cause of action and says that the said verdict and orders and judgment, if any there be, should be set aside because subsequent events have shown positively that respondent was not at that time insane, as his conditions have not changed, and had he had the alleged paranoia he would have been worse, which is not the case; he was not thought to be insane enough to be kept at the hospital where he had been kept after being kidnapped, and subsequent events have shown that he was not dangerous to himself or others or property; that if this fact of subsequent events showing error in the verdict and judgment is not sufficient ground of itself to vacate and set aside the same we place it on the ground of newly-discovered evidence which has continued to the date of filing this petition; and that

to reject it on both grounds 'would not be due process of law'; that they should be set aside further for the reason that it was not due process of law to deny the regular petty jury of twelve when a jury was granted by statute.

"WHEREFORE, plaintiff prays that verdict, all orders and supposed judgment all be set aside and held for naught and respondent be restored to all rights that he may have lost thereby, and for costs and other proper relief."

The pertinent part of the original journal entry of judgment reads:

"And thereupon, within the time allowed by law, the said John F. Hanson filed a motion for a new trial. Said motion was heard afterwards, to-wit: On the 2nd day of April, (1909), and after due consideration was overruled by the court, to which ruling the said John F. Hanson excepted, and thereupon he asked time in which to make a case-made for the supreme court, and the court allowed him ninety days beyond the statutory time to make and serve said case-made, and he allowed fifteen days for the State to suggest amendments, the case to be settled on five days' notice; and thereupon the said John F. Hanson, as attorney for the said Justus B. Linderholm, asked the court for a stay of execution pending the preparation and the hearing of the appeal in the supreme court, which was refused by the court, to which ruling the said John F. Hanson excepted, and thereupon the court rendered judgment upon the verdict, rendered in the case as follows, to-wit: It is hereby considered, ordered and adjudged by the court, after due consideration, that the said Justus B. Linderholm is insane and a fit subject to be sent to the State Hospital for insanity, as per the verdict rendered herein, to which judgment the said John F. Hanson excepted. It was thereupon ordered that the proceedings had herein be certified by the clerk of this court to said probate court, from which it was appealed, for further orders by said probate court.
"C. E. BRANINE, Judge."

Recurring to the earlier Linderholm decisions above cited, it will be seen that most of the matters complained of in this petition have been already presented

to this court. The other matters were waived. The judgments have become final. There must be an end of litigation sometime. It seems that that time has come in this case. On motion of the county attorney this petition was dismissed by the district court.

The allegation that appellant was kidnapped and taken to the Topeka State Hospital for the Insane is defective. It should have set out the particulars of the kidnapping. Moreover, the orders of the court were that appellant be taken to the state hospital, and that did not constitute kidnapping. Furthermore, the petition shows the appellant's release from custody of the hospital authorities. The alleged misconduct of the county attorney in his argument to the jury was a proper subject for review on error in the first appeal. Not then being made the basis of error, it was waived. Neither the district court nor this court could now review the "meager and disputed evidence of insanity."

Aside from the brief of his counsel, appellant files a brief in his own behalf which arouses not only our interest, but our profound sympathy. In part he says:

"It has been asserted that the issue before the Court is The Sanity *vel non* of Justus B. Linderholm. True, that was the issue submitted to the Probate and District Courts of McPherson County, but these courts pushed that issue aside and adopted another issue. Consequently the issue which has in reality been before the courts all these years is, Whether or not Martin Luther was insane, whether or not his writings are proof of such insanity, and whether or not a man who adopts the views of Luther and lives up to them is also insane, questions utterly outside the province of secular courts to pass upon.

"My regular and legitimate profession is that of theologian. . . . Not only that, but as a proper and legitimate representative and exponent of Christianity I have a right to expect that legislators and courts look up to me with deference and respect when, on proper citation, I announce the established and acknowledged truths of the Christian religion, or those truths acknowledged by any considerable portion of

The State v. Linderholm.

Christendom. On such occasions to treat me with dis-
respect and contempt and to revile and blaspheme the
truths which I proclaim (and what form of reviling or
blasphemy is more virulent than to pronounce these
truths the offspring of a disordered mind?), is a viola-
tion of the highest law of the land as well as a statu-
tory crime. . . . During my trial at McPherson I
set out with sufficient clearness that I was a proper
and legitimate exponent of Lutheran doctrine, that I
had been a regular student in a Lutheran theological
seminary, and that I had been employed in ministerial
work by the Lutheran church. . . . As for myself,
I proved that my opinion in religious matters was en-
titled to consideration from the fact that in theological
study and research I had far surpassed my opponents,
having read eighty or more volumes of the original
writings of Martin Luther besides a mass of other the-
ological literature. . . . Despite the fact that I
had proved my intellectual superiority, despite the fact
that numerous considerations urged the court to make
a distinction between me and persons in the ordinary
walks and conditions of life, despite the fact that it
was totally impertinent to even try to measure me by
ordinary standards, the court ignored, and purposely
ignored, all such distinctions, and ordered the jury to
decide my case as if it were that of a common member
of the lower classes of society, not to say in plain
words, a vagrant. The result is that the court has
created a fictitious issue. . . . Here were two per-
sons represented in court, Martin Luther and Justus
B. Linderholm. Could the court determine anything
regarding the sanity of either without first deter-
mining which was which? With regard to the sanity
of Martin Luther the court could determine nothing,
for it had no jurisdiction, and there was no way of
acquiring jurisdiction. Neither could the court, as
matters then stood, determine anything regarding the
sanity of Justus B. Linderholm, for it did not know
whether it was I or the other fellow it had hold of."

However impressive this line of argument may be,
it does not show error on the part of the district court
in dismissing this proceeding. It may be a useless
waste of words but it is kindly meant to appellant when
we here point out to him the way, and indeed the only

way, that his status of full legal capacity can be restored whenever his mental condition will warrant it. Section 8484 of the General Statutes of 1909 reads:

"When notice shall be given to the probate judge of any county that a patient committed to any hospital in the state upon order of said court has been discharged as cured, under [upon] receipt of such notice, signed by the superintendent, whose duty it shall be to give notice of every such case, the probate judge shall enter upon his docket an order restoring the patient in question to all his rights as a citizen, and if a guardian shall have been appointed, said guardian shall be removed. At any time subsequent to the discharge of the patient as not restored to sound mind, the probate judge of the county may hear evidence tending to show that such patient has been restored to reason, and if satisfied as to his recovery, may make and enter a similar order; and thereafter the patient shall not be liable to be again committed to any hospital or insane asylum without a new inquest in his case."

Since the appellant has been released as improved, not however as cured, he can in proper time and season call the matter to the attention of the probate court who will make due inquiry and make the proper order, but the appellant must bear in mind that the probate court's honest and conscientious judgment on this matter, considering all the circumstances, the appellant's best interests and the welfare of society, must control.

It need only be added that whether it was upon any specific ground urged by the county attorney or on any ground of which the district court had judicial cognizance, taking note of the prior steps in this litigation, the dismissal of this proceeding was not erroneous.

The judgment is affirmed.