The State, *ex rel.*, v. Creager.

No. 20,118.

## THE STATE OF KANSAS, ex rel. AGNES BJORN, *Appellant*, v. ROBERT CREAGER, *Appellee*.

### SYLLABUS BY THE COURT.

1. ACTION FOR BASTARDY—*Motive of Prosecutrix—Proper Defense.* It is a proper defense in an action for bastardy that the motive which actuated the prosecutrix in making the charge was to obtain a large sum of money from the parents of the defendant, who was not guilty.

2. SAME—*Evidence—Association of Prosecutrix with Other Men.* In an action for bastardy evidence may properly be received that near the probable date of conception the relatrix associated with a young man other than the defendant under circumstances which offered as much opportunity and as much likelihood of improper conduct with him as with the defendant.

3. SAME—*Instructions—Presumption as to Defendant's Innocence.* The law presumes morality and uprightness of conduct until the contrary is established, and it is not error to instruct the jury trying an action for bastardy, in which the defendant denies the charge, that the defendant is presumed to be innocent until it has been proved to the satisfaction of the jury by a preponderance of the evidence that he is the father of the relatrix's child.

4. NEW TRIAL—*Newly Discovered Evidence—Grounds Insufficient.* The proceedings examined and held that the motion for a new trial on the ground of newly discovered evidence was properly overruled because of lack of proof of reasonable diligence in discovering the evidence and because the evidence was merely cumulative.

5. TRIAL—*No Error in Record.* Nineteen other assignments of error examined and held to present no sufficient ground for reversal.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion filed February 12, 1916. Affirmed.

*S. M. Brewster,* attorney-general, and *Gust Nyquist,* county attorney, for the appellant.

*P. J. Galle,* of McPherson, for the appellee.

*John F. Hanson,* of Lindsborg, for the relatrix.

The opinion of the court was delivered by

BURCH, J.: The action was one of bastardy. The defendant was acquitted and the state appeals.

The relatrix lives at Lindsborg. The defendant lives at Mc-Pherson. On November 11, 1914, the relatrix wrote a letter to the defendant, stating, among other things, that she was in trouble, that the defendant was to blame, and calling to his attention a time when the defendant was at Lindsborg the week after Easter Sunday. Legal proceedings were threatened unless the defendant came to Lindsborg on the first train. About November 16 or 17, the personal attorney for the relatrix, John F. Hanson, saw the defendant's father, J. W. Creager, stated that marriage was out of the question, and presented a plan for quietly disposing of the relatrix, and her child when born, which plan, however, involved the payment of money. Soon after this interview the attorney besieged the residence of the defendant's parents when J. W. Creager was not at home, calling at nine o'clock and at twelve o'clock on Tuesday, on Wednesday, and on Thursday, but Mrs. Creager would not engage in conversation with the attorney. On December 9 the complaint was filed. After a hearing the defendant gave bond for his appearance at the next term of the district court.

On January 30, 1915, the relatrix was delivered of a fully developed child. The trial in the district court took place on March 11, 1915. At the trial the relatrix fixed the time when intercourse occurred at about April 15, 1914, following Messiah week at Lindsborg, which lasted from April 4 to Easter Sunday, April 12. If April 15 were the true date, the period of gestation was eight days longer than the standard time of two hundred and eighty days. The circumstances under which the intercourse occurred were that the defendant and two other boys from McPherson met the relatrix and two other girls at a bakery in Lindsborg about eight-thirty in the evening and went to a park. After a time the defendant and the relatrix separated from the others and went to the porch of Bethany library, where they remained about an hour. The relatrix was nineteen years old at the time of the trial and had known the defendant for some four years. She had seen the defend-

ant the week before Easter, but had not been in his company before that for a long time. At the preliminary hearing she said she had not been in his company for three or four years. At the trial in the district court she would not fix the time further than to indicate that it was quite a long time. After the occurrence on April 15, she did not see the defendant until the following August. She found she was sick on May 16, and she consulted a doctor the first part of June. Nothing was said to the defendant about her sickness when the relatrix saw him in August. She said she discovered her true condition in November, although she knew something was wrong when she commenced to vomit and her menses stopped in May.

On Easter Sunday, in the evening, a young man met the relatrix by a store, without previous engagement, and walked home with her. At the preliminary hearing she testified they were about an hour in getting home. At the trial she reduced the time to about fifteen minutes. This young man was at her birthday party on the 16th of May, and she was with him seven or eight times between April and the latter part of October. His home is in Nebraska. The relatrix had no regular company, but was with other young men occasionally.

One of the two girls who, with the relatrix, were members of the party at the park in Lindsborg was out of the state at the time of the trial. The other was a witness, but was unable to fix the date when the young people were together. She could not say whether the time was April or May. The three boys were witnesses. Each one fixed the date late in May. They went to Lindsborg in an automobile with two other boys, one of whom was out of the state at the time of the trial. The other was a witness, and fixed the date late in May. Some of the boys fixed the time quite definitely by the fact that they were studying for final examinations just before the close of school. One of them thought the date was the 18th of May. Another fixed the time by the fact that he had no overcoat for the trip, the overcoat being at the cleaner's, and his overcoat was at the cleaner's from May 13 to May 19. The boys testified that after meeting the girls and before they went to the park they took a package of bread from the bakery to a church on north Main street. The relatrix testified that in

the course of the conversation with the defendant he referred to an excursion train on the Union Pacific, which he had intended to take to Salina, but did not. There was testimony that such a train was run on April 15. The defendant's father, J. W. Creager, who was the Union Pacific fireman, recalled no such train on that date. There was expert testimony relating to the period of gestation.

The foregoing presents a sketch of the material features of the evidence. The assignments of error will be considered in the order and in the form presented by the personal attorney of the relatrix.

"*First.* In overruling Plaintiff's motion for new trial on the ground of newly discovered evidence, presented on hearing of said motion. (The leading error.)"

This evidence tended to show that the Luther League held meetings at a church. The only meetings held after Messiah week were on April 23, May 6, and May 19. Relatrix filed an affidavit that coffee bread was taken to the church on the evening she was with the defendant, and she had no company home from church on the evening of May 19. Other evidence was that no bread or coffee bread was served with the refreshments at the Luther League meeting of May 19. They had ice cream that night. Coffee bread was served at the meeting on April 23, which was purchased at the bakery where the boys met the girls. The attorney for the relatrix is very anxious now to have the date of the meeting with the defendant changed to April 23.

New trials are granted because of newly discovered evidence only when the evidence could not with reasonable diligence have been discovered and produced at the trial. (Civ. Code, § 305.) The bread incident came out as a detail of the conduct of the three boys and three girls the night they went to the park. The relatrix omitted to testify that they delivered bread to a Luther League meeting at the church before going to the park. The fact was first mentioned by one of the witnesses called on her behalf, but she knew where she went and what was done on the night she met the defendant with the others at the bakery. Her attorney knew the defendant was not confessing the charge against him and ought to have

known that every minute circumstance, time, place, movement and conduct of the meeting between the relatrix and the defendant would be scrutinized with the utmost sharpness. If a Luther League meeting at the church to which the party of young people carried refreshments on the way to the park be important now for the purpose of fixing the date of the visit to the park and to the library porch, it was important at the trial and should have been given attention in preparing for the trial, especially since the date of the Luther League meeting did not fit in with the testimony of the prosecutrix that she was with the defendant on the night of April 15. At the hearing of the motion for a new trial no testimony whatever was offered showing or tending to show that all the evidence relating to the bread incident could not have been discovered and produced at the trial. On the other hand, testimony of the relatrix herself concerning facts within her knowledge is offered as if the facts were newly discovered. Her attorney now says in his brief that there was no time at the trial to investigate the bread incident. He should have testified in the district court. Conceding the statement to be true, he should have applied to the district court for time. This court has knowledge that McPherson and Lindsborg are connected by telephone wires which the diligent may use. When passing upon the motion for a new trial the district court was cognizant of the course the proceedings had taken, and in the absence of any showing of an excuse for nonaction at the proper time this court has no ground for holding that the district court abused its discretion or committed error.

The date of the meeting at the bakery and what followed were important facts and disputed facts. Every witness who gave testimony on these subjects went into details. The bread incident came out in this collateral way. The relatrix can not now make an issue of it, and the testimony offered at the hearing of the motion for a new trial is merely cumulative to the testimony which was produced concerning the main issue. It is said that the new evidence would impeach the testimony of some of the witnesses favorable to the defendant. The court has decided several times that a new trial will not be granted for that purpose.

The State, *ex rel.*, v. Creager.

*"Second.* In overruling Plaintiff's several objections to the introduction of any evidence by the Defendant relative to transactions with Defendant's parents pertaining to an attempt to compromise this cause out of court by one Hanson, and also to evidence that he was attorney for Relatrix, which objections appear in the testimony of J. W. Creager, Mrs. Judith Creager, John F. Hanson, and in the Opening Statement of Defendant's Counsel, and in refusing to strike out such matters admitted. (A leading error.)"

One of the defenses to the action was that the motive actuating the prosecutrix was to get $1500 from the parents of a boy who was not guilty. The defense was a proper one; it was proper to state it in opening the case for the defendant, and it was proper to introduce evidence in support of it. The weight of the evidence introduced was a matter for the jury to consider.

*"Third.* In this, that the instructions are insufficient generally in not including one instruction explaining the pertinence, materiality, etc., of these matters pertaining to compromise referred to in error TWO, if that matter was at all admissible in this cause."

The instructions were sufficient for the guidance of the jury in the determination of the one issue before it—whether or not the defendant was the father of the relatrix's child. If the state desired special instructions upon particular matters, requests for such instructions should have been presented, which was not done.

*"Fourth.* In overruling Plaintiff's objections to evidence offered by Defendant on cross-examination of Relatrix in reference to company kept with other young men when there was no evidence at any stage of the proceedings indicating improper relations with such men. (A leading error.)"

The evidence was that near the probable date of conception the relatrix associated with a young man other than the defendant under circumstances which offered as much opportunity and as much likelihood of improper conduct with him as with the defendant. Such evidence is competent.

*"Fifth.* In failing to give any instruction on the subject of the Relatrix keeping company with other young men if any of such evidence was admissible at all."

This assignment of error is met by the response to the third.

"*Sixth.* In admitting on cross-examination of Reed by Defendant over Plaintiff's objection self-sustaining declarations of Defendant as to his denying the alleged relation with Relatrix when she was not present and the matter was not *res gestæ*, and refusing to strike out same. (Certain error.)"

The attorney for the relatrix pressed the witness for statements of the defendant, made on the way home from Lindsborg the night he was with the relatrix and made at other times, admitting or indicating that he had had improper relations with her. The witness testified that there had been talk on the subject of the defendant's relations with the prosecutrix, but that the defendant's statements would lead to an opposite conclusion. The attorney for the relatrix having thus taken down the bars, it was proper for the defendant to walk in and, on cross-examination, ask for the statements.

"*Seventh.* In admitting over Plaintiff's objection letter written by Relatrix to Defendant dated Nov. 11th, 1914, for any purpose and any part thereof, but particularly that part referring to her father and uncle wanting to take this matter into court."

The objection was to the letter as a whole and not to any specific portions of it. The entire letter was competent evidence for the defendant, and it made no difference when it was introduced.

"*Eighth.* In sustaining Defendant's objection to Relatrix's explaining what she meant in letter by the statement 'the week after Easter Sunday,' if such letter was admissible."

The letter spoke for itself. Besides, the relatrix said there was a mistake in it, and she told over and over again how she fixed the time when she was with the defendant.

"*Ninth.* In sustaining Defendant's objection to Relatrix's answering question as to the possibility of the time of meeting being later than April 15th, 1914, on the ground that it was leading."

The question was leading and suggestive. The form of the question was immediately changed and the witness, apparently taking the cue, said she was "not quite certain." Besides this, she had expressed her uncertainty in other portions of her testimony.

The State, *ex rel.*, v. Creager.

"*Tenth.* In sustaining Defendant's objection to Relatrix's stating who the father of her child was as a result of a particular intercourse on the ground that the question called for a conclusion of the witness."

Utterly frivolous in view of the repeated statements of the relatrix that she never had intercourse with the defendant except on the one occasion, and her testimony that the defendant was the father of her child.

"*Eleventh.* In overruling Plaintiff's objection to Defendant's asking Relatrix if she did not testify in a certain way in the Justice Court, objecting on the ground that it was incompetent, irrelevant, and immaterial, and particularly because not the best evidence, the testimony being transcribed and filed."

Perfectly legitimate cross-examination under elementary rules.

"*Twelfth.* In sustaining Defendant's objections to Relatrix's explaining why a Miss Esther Forsberg was not at the trial as a witness."

Miss Forsberg's nonattendance as a witness was sufficiently explained.

"*Thirteenth.* In overruling Plaintiff's objection to Witness Saylor on cross-examination being required to guess at the time of this occurrence after he had said that he did not know. (Gross error.)"

Utterly frivolous.

"*Fourteenth.* In sustaining Defendant's objection to question asked Reed by Plaintiff pertaining to studying on the ground of its being leading."

The question was leading and was one by which the attorney undertook to badger his own witness.

"*Fifteenth.* In overruling Plaintiff's objection to testimony of Bryan Darrow as to the contents of a day-book in a dry cleaning shop on the ground that it was not the best evidence."

The witness was telling how he had refreshed his memory, and said, "I looked it up on their books." That was the answer objected to, and the objection was properly overruled. Afterwards the witness gave the dates shown by the books referred to without objection. The attorney for the relatrix now asks for a new trial so he can introduce the books themselves, and the books show the precise dates given by the witness.

The State, *ex rel.*, v. Creager.

"*Sixteenth.* In that the instructions given, generally outside of matters already referred to, are not sufficient for the purposes of this case, and do not state the law correctly."

See *Third*, above. The law presumes morality and uprightness until the contrary is made to appear, and in a case of this character guilt must be made to appear to the satisfaction of the jury by a preponderance of the evidence.

"*Seventeenth.* In not granting Plaintiff a new trial on account of misconduct of the jury, and because one juror had failed to disclose his prejudice and disqualification on his examination as to his qualification as a juror, as appears by the affidavit of M. C. Donal. (A very material error!)"

The examination of the juror whose conduct is questioned is not given in the abstract. For all the abstract shows he may have been accepted without examination. The affidavit does not disclose misconduct, or any prejudice against the relatrix, or the proper prosecution of bastardy cases, or any legal disqualification to sit as a juror.

"*Eighteenth.* In not granting a new trial because of surprise and particularly because of not getting Esther Forsberg as a witness."

What testimony the witness would have given if she had been present, or would give if her presence can be secured at another trial, is not confided to the court, and the rule which should have been applied in the case in which Mary was a witness governs.

"*Nineteenth.* In not granting a new trial on the grounds that the verdict was given under passion and prejudice, and because it was contrary to the veidence."

The only prejudice and passion revealed in this case appear in the brief of the attorney for the relatrix. The warning given him in respect to his demeanor toward members of this court (*The State v. Linderholm,* 95 Kan. 669, 671, 147 Pac. 427) is now extended, and villification of the judges of other courts in briefs which he files here will not be tolerated again. The verdict is sustained by sufficient evidence.

"*Twentieth.* In refusing a new trial on each and every ground set up in the motion for new trial and not hereinbefore specifically pointed out."

The court considers none but errors specifically assigned. It can not undertake to check the records to see if counsel has omitted anything.

The State, *ex rel.*, v. Cumiskey.

"*Twenty-first.* In overruling challenge to the qualification of juror Clark, plaintiff exhausting all his challenges. (Give this error careful attention!)"

This subject is covered by a long line of decisions, some of which are referred to in the case of *The State v. Hoerr*, 88 Kan. 573, 129 Pac. 153.

"*Twenty-second.* In all rulings adverse to Plaintiff."

Padding.

"*Twenty-third.* In giving any judgment in favor of Defendant and adverse to Plaintiff, and in not giving judgment in favor of the Plaintiff."

Not an assignment of error at all. (*Lumber Co. v. Smith*, 84 Kan. 190, 114 Pac. 372.)

The judgment of the district court is affirmed.