No. 28,184.

W. H. Harrison, *Appellee*, v. Mamie Lyon et al., *Appellants*.

(271 Pac. 395.)

Opinion filed November 3, 1928.

*William Keith, James A. Conly* and *Monroe Wright,* all of Wichita, for the appellants.

*C. A. Matson, I. H. Stearns, E. P. Villepigue* and *J. N. Haymaker,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action to cancel a deed purporting to convey certain Wichita town lots from plaintiff to defendants and to bar and enjoin them from asserting any interest therein.

Plaintiff alleged and his evidence tended to prove that he had executed the deed in favor of the defendant, Mamie Lyon, in contemplation of a proposed contract with her whereby she was to undertake the care of plaintiff's invalid daughter, but that such contemplated agreement was never made or undertaken, and that the deed was never delivered, but kept by plaintiff in his safety-deposit box

in a bank in Wichita, to which box defendant had access by means of a key which he had intrusted to her, and that without authority and in fraud of his rights she had abstracted the deed and presented it for registration.

Defendant Mamie Lyon pleaded and the testimony given in her behalf tended to show that she purchased from plaintiff the properties named in the deed for $11,000 in cash, as shown by two checks drawn by her in plaintiff's favor for $5,800 and $5,200 respectively and cashed by him.

Touching the cashing of the checks, the evidence in plaintiff's behalf tended to show that defendant, Mamie Lyon, pretended that she and her husband were not on good terms and that she had $11,-000 on deposit in a Wichita bank which she desired to withdraw and secrete from her husband, and that she sought plaintiff's aid in that project, and that plaintiff assented thereto and did cash the two checks, but immediately delivered to her the entire sums thereof, and that no sale of his property to Mamie Lyon was ever made or intimated in connection with the cashing of these checks or otherwise.

The evidence adduced at the trial covered many other intriguing details, and at its conclusion the trial court announced his decision in favor of plaintiff. The record recites:

"THE COURT: I think this is one of the strangest cases that has ever come to my attention in court. There is a serious difference in the evidence as to facts. It is not a question of law. The court will have to decide one way or the other. If the court decides wrong, there will be a great injustice to one party. If the story of the defendant is true, they are out $11,000. If the story of the plaintiff is true, he is out his property. But from all the facts in the case I am going to find for plaintiff. What is the relief, you ask? You ask for an injunction and rescission [cancellation] of the deed?

[Counsel for Plaintiff]: "Rescission [cancellation] of the deed.

"THE COURT: You may prepare findings of fact and conclusions of law.

[Counsel for Defendants]: "You are going to make findings of fact, aren't you?

"THE COURT: I will if you wish.

[Counsel for Defendants]: "We wish you to make them.

"THE COURT: I will make findings of fact and conclusions of law, and if either side wants to present suggestions to me, I will consider them. I will grant you ten days, and in the meantime, the restraining order will continue in effect."

Pursuant thereto each party submitted suggested findings of fact. Those prepared by counsel for plaintiff were adopted *in toto* by the trial court. They read:

"1. The plaintiff, W. H. Harrison, at the time of the execution of the deed involved in this controversy was seventy-eight (78) years of age, and subject to the usual infirmities of mind and body of a man of such years. Mamie Lyon was in her forties, and the wife of the defendant, R. T. Lyon, and had long been a neighbor and friend of the plaintiff and his family. And said W. H. Harrison had raised a family, all of whom has passed the age of maturity and made their homes separate from the plaintiff, except the daughter, who is now about forty-one (41) years of age, and afflicted with curvature of the spine and spinal diseases, and from the time of her birth has been a cripple all of her life, weak in both body and mind and unable to walk and dress and care for herself, and has to be lifted and carried around like a helpless baby, and she will remain in this condition during the rest of her life. This girl and Mamie Lyon are strongly attached to each other.

"2. That on or about the first day of April, 1927, plaintiff W. H. Harrison, and defendant Mamie Lyon, partially agreed upon a plan, whereby the defendant Mamie Lyon, was to take care of said invalid daughter, and care for her during the rest of her life; and to reimburse her for said services and to insure the support of said invalid daughter, the plaintiff was to pledge the real estate in question as security for the performance of service, which agreement was never completed nor the details thereof agreed upon. In contemplation of this agreement, the plaintiff then executed the deed in question, but never surrendered the possession of the same. That afterward, the plaintiff, W. H. Harrison, made a notation on said deed, in substance, 'Not for record—to be held in escrow as security for the agreement between parties interested,' and placed said deed in his private lock box in the First National Bank in the city of Wichita, Kan. The agreement mentioned in the writing on the deed was never consummated.

"3. That said defendant, Mamie Lyon, induced the plaintiff, W. H. Harrison, to give her a duplicate key to said lock box, and that, on or about the 9th day of July, 1927, while the plaintiff, W. H. Harrison, was absent from the city of Wichita, Kan., on his vacation, said defendant, Mamie Lyon, illegally and with fraudulent intent, and without paying any of the consideration for the delivery of said deed, entered the private lock box of the said plaintiff and procured the possession of said deed, and on the 9th day of July, 1927, presented the same to the county clerk of Sedgwick county, Kansas, for transfer, and same was entered on the transfer records of said office of the county clerk of Sedgwick county, Kansas; and thereafter and on the same date said defendant, Mamie Lyon, presented said deed to the recorder of deeds of said county and state, i. e., the defendant, Joseph Bowman, to be spread on the records of said register of deeds of said county and state, and that said deed covered the following described property, to wit: Lots 22 and 24, Volutsia avenue in Lippit and Aldrich's subdivision of lot 8, block 1, Richland First Addition to the city of Wichita, Sedgwick county, Kansas; and also lots 1037 and 1039, Greiffenstein's Thirteenth Addition to the city of Wichita, Sedgwick county, Kansas.

"4. That said defendants, Mamie Lyon and R. T. Lyon, personally or by and through their agents, erased or caused to be erased from said deed the statement in substance set out in finding No. 2.

"5. That the defendant, Mamie Lyon, never at any time took charge of said invalid daughter, nor gave any of the consideration tentatively understood and agreed upon for the delivery of said deed, and the plaintiff, W. H. Harrison, never received any consideration for said deed, nor delivered nor authorized anyone to deliver said deed to the defendants, Mamie Lyon and R. T. Lyon, or to anyone whomsoever, and that said deed was illegally and with fraudulent intent removed from the lock box where it was held in escrow.

"6. That the evidence in this case sustained the allegations in plaintiff's petition, and said allegations are substantially true.

"7. That the defendant, Mamie Lyon, made two checks in the aggregate sum of $11,000, payable to W. H. Harrison, which were cashed by him on July 6, 1927, in the presence of Mamie Lyon, and the currency was then given to Mamie Lyon by W. H. Harrison."

Judgment was entered in plaintiff's behalf, and defendants appeal, urging various errors. They first contend that these findings do not cover the issues made by the pleadings. We think they do, quite comprehensively.

The next objection is that the findings should have been made by the court itself, and that it was improper for it to adopt as its own those prepared and submitted by plaintiff's counsel. This point is without merit; such practice is common; indeed defendants not only did not object to it, but they themselves suggested findings for the court's adoption. See, also, *Howard v. Howard,* 52 Kan. 469, syl. ¶ 3, 34 Pac. 1114.

Another objection to the judgment is that the court announced its decision before it made or approved the findings of fact. This point, too, is devoid of merit. Nothing is more common than for a trial court to announce its decision informally and to direct the attorneys to prepare a journal entry of judgment setting down with accuracy and detail the particular matters intended to be determined and concluded by the judgment. *(Howard v. Howard,* supra.) Of course, when rival counsel cannot agree as to what the judgment roll should recite the court takes these details in hand and settles them itself. But whatever may be the literary contribution of attorneys for the parties or either of them, or of the clerk of the court, to the composition of the journal entry of judgment, when it has received the approval of the court it stands as the decision of the court, and is valid and binding against all concerned unless set aside as permitted and prescribed by law.

We note defendants' objection of irrelevancy in the findings pertaining to plaintiff's age and domestic circumstances, and his tenta-

tive but fruitless negotiations with Mrs. Lyon for the care of his invalid daughter. These quite credibly explain why the deed conveying plaintiff's properties to her had been made.

The next assignment of error pertains to the *weight* of the evidence, which in the opinion of defendants' counsel preponderated greatly in their favor. But the determination of the *weight* of the evidence and the credence to be accorded to the witnesses was the exclusive function of the trial court (*Rasmussen v. Rasmussen*, 124 Kan. 461, 463, 464, 260 Pac. 618), and certainly there is nothing in the lengthy record presented by the abstract and counter abstract to arouse our misgivings as to the correctness of the result reached by that tribunal.

A curious argument in defendants' behalf is based upon some irrelevant matters developed in the course of the trial which tended to show that plaintiff was enamored with Mrs. Lyon. This, it is argued, revealed that plaintiff had come into court "without clean hands"; and some eight or ten pages of appellants' brief are taken up with excerpts from law books and decided cases holding that litigants *in pari delicto* with their adversaries, or who are themselves guilty of inequitable conduct, fraud and the like, will be denied equitable relief. In their brief they conclude thus:

"If the appellee received the money, the deed should be placed of record in Mamie Lyon. Likewise, if he did not receive the money, his acts and conduct with her were such as to place him in such a position that a court of equity must refuse him relief, for when its precepts have been overstepped, in silence will the court sit."

We discern no substantial basis for the invocation of this rule in the present case, and we apprehend that counsel will hunt in vain for a precedent where equitable relief had been denied to an old man about to be swindled out of his property on the wholly extraneous ground that he was enamored with the wife of one of the wrongdoers, by whose wiles the old man had been led into a course of conduct which lent color to their spurious pretense that his property had been acquired by legitimate purchase and for value received. (See *Saylor v. Crooker*, 97 Kan. 624, 627, 628, 156 Pac. 737; *Norris v. York*, 105 Kan. 448, 185 Pac. 43; *Harper v. Harper, &c.*, 85 Ky. 160, 7 A. S. R. 583, 587, 588; *Hobbs v. Boatright*, 195 Mo. 693, 5 L. R. A., n. s., 906.)

There is no error in the record and the judgment is affirmed.