No. 29,934.

GRACE B. MARTIN, *Appellee*, v. THE SHELL PETROLEUM CORPORATION, *Appellant* (et al., *Defendants*).

(299 Pac. 261.)

Opinion filed May 9, 1931.

*Albert Faulconer, Kirke W. Dale, C. L. Swartz,* all of Arkansas City, *Guy A. Thompson, Samuel A. Mitchell, Frank A. Thompson, Truman Post Young* and *James T. Dolan,* all of St. Louis, Mo., for the appellant.

*Harold W. Herrick,* of Winfield, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: In this action the appellee sought to recover damages caused by pollution of the fresh water supply to a farm owned by her by reason of the drilling, casing and plugging of oil and gas wells by the defendants. Before trial the action was dismissed as to all defendants except the Shell Petroleum Corporation. Judgment was rendered for the appellee on the verdict of the jury against the Shell Petroleum Corporation, and it appeals.

The appellee in her amended petition alleged that she is the owner of a well-improved farm in Cowley county; that prior to the drilling of oil and gas wells by the appellant there was "an abundant, never-failing supply of pure, fresh water" from a well ninety feet deep on the farm; that the fresh-water sands or veins from which the well drew its water are the only known fresh-water-bearing sands or veins on the farm supplying fresh water in sufficient quantities for domestic and stock use on the farm; that the appellant completed drilling two oil and gas wells, one on land adjacent to appellee's

farm on the north about December 1, 1927, and the other on the appellee's farm about February 1, 1928, the depth of each well being approximately 2,005 feet; that in drilling the oil and gas wells the appellant penetrated various strata or veins containing salt water and also the sands or veins containing the fresh water which furnished the supply of fresh water for the well of appellee; that in so doing the appellant failed to exercise care in properly casing, plugging and protecting the sands or veins containing salt water so as to prevent the escape of salt water from the salt-water sands or veins into the fresh-water sands or veins, and failed to exercise care in properly casing, plugging and protecting the sands or veins containing fresh water from being contaminated by the escaping salt water; that because of such failure the fresh-water sands or veins have become contaminated and polluted and are ruined as a source of fresh water, and the water well of the appellee is entirely ruined and destroyed as a fresh-water well, and is totally unfit and unsafe to use for human beings, for live stock or poultry, or for irrigating flower and vegetable gardens; and that such condition of the water is permanent in character.

The appellant contends that the appellee failed in her proof and that there is no substantial evidence to support the verdict of the jury. This requires an examination of the evidence.

The appellee was the owner of the northwest quarter of section 19, township 31, range 3, in Cowley county. The dwelling and other improvements were located near the northwest corner of the farm. In 1925 the well in question was drilled about 50 feet east of the house on the highest elevation on the farm, from which the land sloped to the west and south and abruptly to the east. The man who drilled the well testified that he drilled a 6-inch hole 72 feet deep, at which point he struck rock; that the well was cased with 5½-inch casing; that the casing rested on the top of the rock; that a 2-inch hole was then drilled through 16 feet of rock, where he struck a vein of water in the rock; and that after drilling 2 feet further he found sand and gravel and a good supply of fresh water. A number of witnesses testified that the water from the well was fresh until the completion and operation of certain oil wells by the appellant. Prior to the drilling of any oil well another fresh-water well had been drilled near the southwest corner of appellee's farm.

The Harness farm lies immediately north of appellee's land. In

the fall of 1927 the appellant drilled and completed an oil well near the southwest corner of the Harness farm, which was 875 feet north of appellee's water well; a structure carrying salt water was encountered at about 1,200 feet. An oil well, drilled by Derby some distance south and west of the appellee's water well, was completed July 10, 1928; a salt-water pond was made near the Derby well in the fall of 1928. In March, 1928, the appellant drilled an oil well on the appellee's farm 455 feet northwest of appellee's water well and encountered salt water at about 255 feet. At about the same time the Johnson & Vicker well No. 4 was completed 480 feet northwest of appellee's water well; the record does not show any direct evidence of salt water being encountered in drilling this well, but discloses evidence tending to show that it was properly filled and plugged.

Evidence was introduced which tended to show that a few days after the completion of the Harness well by the appellant the water from two water wells on the Harness farm north of the oil well, one 90 to 100 feet deep and the other 48 feet deep, and the water from the appellee's well tasted of salt, and that following the completion of the oil well on the farm of the appellee the water from her water well became so salty that it was unfit for use, and the well in the southwest corner of her farm also tasted of salt. The appellee also introduced evidence to show the value of her land both before and after the claimed pollution of the water.

The theory of the appellee is that the water supply on the farm was under 16 feet of rock; that the well was protected by casing from any seepage from the top of the ground; and that the water vein under the rock was polluted by the appellant in drilling and operating the two oil wells.

The appellant introduced testimony which tended to show that its oil wells, of which complaint is made, were drilled, cased, filled and plugged by the best known methods in the industry, and that the appellee's water well did not produce good water prior to the drilling and operation of the oil wells. A geologist testified that the rock formation in that community contains probably the worst water from the standpoint of mineralization in the state, and is distinguished by the large amount of salt and gypsum it contains; and that the wells which obtain water from this formation are invariably highly mineralized.

The evidence, although not strong, fairly supports the appellee's

theory of the case and was sufficient to support the verdict. This court cannot weigh conflicting evidence. The matter of determining the weight of evidence is the exclusive function of the trial court. (*Baldwin v. Soldiers' Compensation Board,* 117 Kan. 129, 230 Pac. 82; *Wilson v. Stafford,* 124 Kan. 382, 384, 260 Pac. 627; *Harrison v. Lyon,* 126 Kan. 705, 271 Pac. 395.)

It is argued that the trial court erred in instructions three, four, five and six given to the jury. These instructions are as follows:

"III. It was the duty of the defendant under the law to so operate and plug its oil wells as to prevent the escape of salt water into the plaintiff's premises or in the water-bearing strata thereon to the damage of the plaintiff. And if it failed to so do it would be liable in damages to the plaintiff.

"IV. The burden of proof is upon the plaintiff, and before she can recover in this action she must prove by the evidence and by the preponderance thereof that the defendant so operated or plugged the wells or well in controversy as to permit salt water to penetrate the fresh-water-bearing strata upon the plaintiff's land, and that the plaintiff was damaged by reason thereof, the amount of such damage. And if she has so proven, then she would be entitled to recover from the defendant the amount of such damage. If she has failed to so prove, then she would not have the right to recover anything from the defendant.

"V. There has been some evidence to the effect that other companies than the defendant company drilled and plugged oil wells in the vicinity of plaintiff's land; and you are instructed that even though you might believe that other companies were negligent and careless and permitted salt water to enter into the fresh-water-bearing strata of plaintiff's land, such fact would not relieve the defendant of liability, provided you find from the evidence and by a preponderance thereof that the manner in which the defendant operated or plugged its oil wells contributed to the spoiling of plaintiff's fresh-water supply. That is, each and every company which directly contributed or contributes to the polluting of plaintiff's fresh-water supply, if it was so polluted, would each be liable to the plaintiff for any damage suffered by reason thereof.

"Of course, if you should find from the evidence that the defendant, in the operating or plugging of its wells, did not contribute to the pollution of plaintiff's water supply, then the plaintiff could not recover from the defendant, even though her water supply was impregnated by the operation of other companies.

"VI. The questions for you to determine are: Did the defendant, in the operation or plugging of the two wells in controversy, permit salt water to impregnate the plaintiff's fresh-water supply? Second, Was she damaged thereby, and, if so, how much?"

It is first contended that these instructions were erroneous for the reason that it was necessary for the appellee to prove that the ap-

pellant was negligent in some manner in drilling, casing or plugging the well. The answer to this contention is found in the statute, R. S. 55-118, which is as follows:

"If any well or other excavation be put down to or through any vein or strata containing salt water or water containing any minerals in appreciable quantities, it shall be the duty of the owner or operator, driller, or person putting down such well or excavation to case or plug such well or excavation in such manner as to exclude all salt water or water containing minerals in appreciable quantities from both upper and lower veins or strata holding water suitable for domestic purposes."

The action is based on this statute, and negligence is not a necessary element of appellee's case. (*Hazelwood v. Mendenhall,* 97 Kan. 635, 97 Pac. 636; *Roman v. St. Louis-S. F. Rly. Co.,* 120 Kan. 585, 245 Pac. 115; *Arnold v. Coffey County Comm'rs,* 131 Kan. 343, 291 Pac. 762.)

It is further argued that, in the instruction just quoted, the court ignored the fact that negligence was alleged in the pleadings. The allegations with reference to negligence were redundant and immaterial and were properly treated by the court as surplusage.

Other objections are made to the instructions given by the court to the jury, all of which have been carefully examined and are found to be without merit. The jury was fully and correctly instructed concerning the law of the case.

It is urged that the court erred in refusing to give instructions requested by the appellant. A part of them were drawn on the theory that negligence was an element of appellee's case. We have carefully examined all requested instructions and find that they were properly refused.

The appellant claims error in the court's refusal to submit to the jury requested interrogatories. They were not material to the issues involved, and the court properly refused to submit them.

It is contended that the court erred in refusing to require the jury to answer more specifically interrogatory number six. The question and answer given were as follows:

"VI. Do you find that water-bearing sands on the Martin [appellee's] farm have by salt water become permanently unfit for use? A. Up to present date."

This answer, when considered with the general verdict, was sufficiently definite. (*Greiner v. Greiner,* 129 Kan. 435, 283 Pac. 651.)

It is urged by the appellant that the court erred in permitting the jury to taste the contents of a bottle containing a deposit which, it

was testified, was obtained from boiling down two quarts of water from appellee's well. It was testified on behalf of the appellee that it tasted "very much like salt." When the bottle was handed to the jury one of the jurors tasted its contents,.and while he was passing it to the next juror objection was made. The court overruled the objection and permitted the other members of the jury to taste it. This was not error. (*State v. Jackson*, 121 Kan. 711, 249 Pac. 688.)

We have examined the record, and no error in the evidence, instructions, verdict or judgment is disclosed.

The judgment is affirmed.