No. 30,043.

ARTHUR DALY, *Appellee*, v. THE GYPSY OIL COMPANY, *Appellant*.

(300 Pac. 1099.)

Opinion filed July 3, 1931.

*Ed. T. Hackney,* of Wellington, *James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole* and *C. L. Billings,* all of Tulsa, Okla., for the appellant.

*Bert E. Church,* of Wellington, *W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *William E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Arthur Daly against the Gypsy Oil Company, a corporation, to recover damages for negligently destroying the water supply of plaintiff for domestic use and for his live stock. The plaintiff prevailed, and the defendant appeals.

In his petition plaintiff alleged that he owned and operated a farm for general agriculture and live-stock business; that he had thereon

two wells, one near his house for domestic use, which was about thirty-one feet deep, and another near his barns and outbuildings about twenty-three feet deep, for the use of his live stock kept on the farm, and that these wells had furnished an unlimited supply of good water for more than forty years prior to the time it was drained and destroyed by the negligence of the defendant. It was alleged that the defendant was engaged in core drilling in the community for the purpose of determining the geology and character of the ground in that section of the country, and with the view of exploring for oil and gas. In August, 1929, defendant drilled the hole on the corner of plaintiff's farm about 450 feet deep, and when the drilling was finished and the core-drilled hole abandoned, defendant knowingly and negligently failed to fill and plug the core-drilled hole, with the result that the vein of water supplying the plaintiff was drained and the wells rendered worthless to him. Plaintiff stated at length the nature of the loss occasioned by the exhaustion and ruin of the wells, and asked for damages in the sum of $2,950. In an amendment to the petition, which was permitted, it was alleged that the failure to properly fill and plug the abandoned hole consisted in merely stuffing some rags and cloths in the hole about four feet from the top and then placing dirt upon the top of the rags and leaving the hole below four feet from the surface entirely open and unfilled; that if the abandoned core-drilled hole had been properly plugged and filled from the bottom to the top, the veins of water supplying the plaintiff's wells would not have been permitted to run down into the unfilled and unplugged hole.

A demurrer of defendant to plaintiff's petition was overruled, whereupon defendant filed an answer admitting its corporate existence and denying all other averments of the petition. A trial was had with a jury, which resulted in a verdict for plaintiff. Special findings were returned with the verdict to the effect that defendant was negligent in not plugging and filling the core-drilled hole properly, and also that the experience of prudent operators, of which the defendants should have had knowledge, as to the effect of core drills on water wells, would cause a reasonably prudent operator to anticipate that leaving the core-drilled hole as it was left would drain and destroy plaintiff's wells.

The principal question raised upon this appeal is: Was the evi-

dence sufficient to support the allegations of negligence and to justify the verdict rendered? Another is that if there was sufficient evidence of negligence to justify the court in submitting the case, should the jury have allowed the defendant something in mitigation of plaintiff's damages? And a question is also raised upon the refusal of the court to give an instruction that it is proper for the jury to call to its aid, in arriving at a verdict, the knowledge and experience it possessed in common with the generality of mankind in the matter as to the effect of core-drilled holes on water wells.

As to the sufficiency of the evidence to sustain the verdict, there was considerable testimony tending to support the averments of plaintiff's petition and the verdict returned. Testimony was produced by the plaintiff to the effect that the hole was drilled by defendant on the corner of his farm, and about 574 feet from his house well, and about 800 feet from his stock well. Previous to the sinking of the core-drilled hole there had been an abundance of good wholesome water in his wells. The hole was drilled and completed in the latter part of August, 1929. The well of a neighbor, Moomaw, was near the wells of the plaintiff and water therein had been found in the same formation as water was found in plaintiff's wells. Within a few days after the drilling was completed the Moomaw well had been drained dry, and in October plaintiff found both of his wells to be dry. The hole drilled by defendant was four inches in diameter and when finished and abandoned by defendant it was not filled up or plugged except that about four feet from the top of the hole gunny sacks and some old worn clothing had been pushed into the hole, and above this clothing dirt was placed three feet or more up to the surface of the ground. Below this cloth plug there was no filling of the hole and no plugging of the veins of water. After the water was exhausted in plaintiff's wells and they had become dry the plaintiff with others examined the core-drilled hole, and after removing about three feet of dirt from the surface of the ground they found two gunny sacks and an old shirt and overalls which they removed. They found the hole was open below and the water was standing in the hole up about thirty-eight feet from the surface. The water in the hole appeared to be in motion, that is, slowly circling around the hole. Evidence was produced tending to show that drill holes that were not plugged or filled had drained and destroyed some wells in that section of the state. Instances were shown of wells being drained dry after the sinking of holes that were

not plugged or filled and that after the same holes were filled or plugged, the water in the wells was restored. One witness stated that when a hole was drilled near his well it was not plugged and the water in his well was exhausted or drained out the following day. Three weeks later the drillers came back and plugged the hole, using cement, cinders and sand, with the result that the supply of water in his well was restored. Other witnesses testified that they had had similar experiences and that core-drilled holes dug near their wells had the effect of draining or destroying them, and that afterwards, when the holes were plugged, the water came back in the wells.

On the other hand, defendant produced a witness who testified that he had been with the company for years, had drilled more than 3,000 such holes and had never heard a complaint that the drilled holes affected the water supply of wells in the vicinity of the drilled holes, except in one instance. He admitted that holes are closed in certain areas by his company, depending upon the formations through which the hole is drilled. He also stated that if salt water was found plugging was done, and if they learned that water wells were being drained, plugging would be necessary, but his experience was that the drilled holes had never exhausted or affected the water wells. There was testimony that other holes had been drilled within a mile or two from plaintiff's home, and defendant argues that these might have been the cause of the exhaustion of plaintiff's wells. These holes, however, had been dug a considerable time in the past and the fact that the plaintiff's wells had not been affected or injured by them, could be accounted for by intervening wrinkles and ridges in the subsurface strata. There is certainly enough evidence in the record to sustain the conclusion that plaintiff's wells were injured and practically ruined by the hole drilled by defendant. Was it negligence on the part of defendant to leave the hole unplugged and unfilled? Defendant contends that in view of the fact it had drilled thousands of holes in the same way without draining water wells in the vicinity, that it was not bound to anticipate that the leaving of the hole without plugging or filling would injure plaintiff's well and its failure could not constitute culpable negligence. The contention is that no one is bound to anticipate something that is not likely to occur, but the proof in the case is that the things that happened in this instance had occurred before and therefore a reasonably prudent person should have foreseen the result of leav-

ing the holes without plugging and filling. The evidence was sufficient at least to submit that question of fact to the jury, and it has found that the defendant was negligent in that respect. The fact that defendant drilled the hole in its customary way and did not anticipate that injury would result from its failure to plug and fill the hole, would not necessarily relieve it from the payment of damages for the injury resulting from the omission. In *Walmsley v. Telephone Association,* 102 Kan. 139, 169 Pac. 197, a question arose as to anticipated results from an act charged to have been negligence, and it was said:

"But the law does not say that if the particular injury arising from the negligence cannot be anticipated a recovery cannot be had. That some damage, some injury, would probably arise from the existing negligence and that it could reasonably have been expected is all that the law requires to justify a recovery. (Citing cases.)" (p. 143.)

The defendant cannot evade liability for its negligence because it had drilled the hole in its customary method and had drilled numerous holes without interfering with or destroying water wells near the drilled hole. In a case where there was a question of a necessity for an inspection of an appliance, and it was contended that such an inspection was not customarily made by railroad companies, it was said:

"The fact that such an inspection may not have been employed by the company, or that it may not be used among railroad companies, does not prove that the failure to make it is not negligence. As was said by Justice Brewer in *Missouri Pac. Ry. Co. v. Haley,* 25 Kan. 64, 'It may often be the duty of courts to pronounce conduct negligent, and grossly so, although sanctioned by the custom of the road and the rules of the company, and forbidden by no statute.'" (*Railway Co. v. Kingscott,* 65 Kan. 131, 135, 69 Pac. 184.)

The case of *Hall v. Galey,* 126 Kan. 699, 271 Pac. 319, involved some of the questions presented in this case. There damages were sought for the leaving of an abandoned gas well in such a condition that salt water flowed from it and caused the pollution and destruction of a well on plaintiff's farm. Before the pollution of the well it contained a never-failing supply of good water which had been used by plaintiff for household, stock and irrigation purposes. It was contended there, as here, that the plaintiff's well might have been injured by salt water from other extinct gas wells in the vicinity. The jury, however, found upon the testimony that plaintiff's well was polluted by a leakage from the defendant's gas well into the fresh-water strata of plaintiff's well. Defendant contended

that there was a lack of scientific evidence to show with precision that plaintiff's water well was ruined by salt water from defendant's gas well. It was held that the pollution was shown about as convincingly as could be established in a case of that nature, and the court added:

"Defendants emphasize the want of evidence regarding the geological formation, the nature, trend and direction of the subsurface strata, which would have established with scientific precision the source of the salt water which ruined the well. However, our concern is whether the evidence which plaintiffs did adduce was sufficient to take the case to the jury, and to this it seems imperative to return an affirmative answer. (*Gilmore v. Salt Co.*, 84 Kan. 729, 115 Pac. 541; *Helms v. Oil Co.*, 102 Kan. 164, 169 Pac. 208.)" (p. 702.)

A later case, *Martin v. Shell Petroleum Corp.*, ante, p. 124, 299 Pac. 261, is more closely in point. The action was to recover damages caused by defendant's polluting the veins of water supplying plaintiff's well with salt water brought to the surface by defendant in drilling and operating an oil well. Evidence was produced that the water in plaintiff's well was fresh and good until the oil well near by was drilled, and that within a few days after the drilling of the oil well the water in plaintiff's well became salty and unfit for use. The topography of the ground was shown and that salt water came from certain levels in the oil well. On the other hand, defendant offered evidence tending to show that the oil well had been drilled, cased, and completed in accordance with what was called the best-known methods of the industry. There was testimony that in oil wells drilled near by salt water had been encountered at various depths. The court recognized that the testimony supporting plaintiff's claim and the verdict of the jury was not very strong, but that it was sufficient to support the verdict. So here the testimony does not trace the veins of water supplying plaintiff's well foot by foot to the open, unplugged hole left by the defendant, but the facts developed, direct and circumstantial, fairly tend, we think, to support the theory and claim of plaintiff, and we have no doubt that the evidence on the whole was enough to take the case to the jury and to support the verdict.

There is a further contention that the jury should have allowed defendant something in mitigation of damages. The plaintiff, inexperienced in drilling operations and without necessary equipment, could hardly be expected to hunt for veins and plug them or to dig other wells in order to obtain a supply of water for his home and his

stock. An answer to defendant's objection was given in *Hall v. Galey*, supra, wherein a like question was raised:

"Error is also assigned on the trial court's refusal to give an instruction on the plaintiffs' duty to mitigate their damage, which defendants suggest could have been done by developing greater use of a spring on the farm, or by digging a new well. The doctrine of an injured party's duty to mitigate his damages is inapplicable to plaintiffs' situation. Whatever plaintiffs could do to lessen the damage to their well because of the wrongdoing of defendants was, of course, their duty to do. But to dig a new well—assuming a new well convenient to their farm buildings would not be subject to the same contamination as the old well—would not be a minimizing of the damage or total destruction of the old well; neither would the development of the spring, if indeed it had a never-failing and abundant supply of wholesome water—a fact which was not established. Those and other possible sources of a new and adequate supply of water may exist, but they take nothing from defendants' liability for their wrongdoing in the case presented by this appeal." (p. 704.)

Some complaint is made of the refusal of a requested instruction to the effect that the jury could call to their aid, in determining the case, the knowledge and experience they possessed in common with the generality of mankind. The court instructed the jury that:

"You are to take into consideration all the facts and circumstances shown by the evidence and to use your experience and knowledge of facts that are within the common knowledge of mankind generally."

It thus appears that the rule of the requested instruction was sufficiently brought to the attention of the jury.

Another requested instruction was not given as framed by defendant which included the emphasizing of the consideration the jury should give to the defendant's experience as a reasonably prudent operator as to the plugging of the drilled hole, as well as that of other reasonably prudent operators in core drilling. We think the instructions given by the court fairly cover the case and that the omission to stress the defendant's experience as a reasonably prudent operator, as well as that of other operators, was not error.

The judgment is affirmed.