No. 31,901

J. H. Spencer et al., *Appellees,* v. The Derby Oil Company, *Appellant.*

(37 P. 2d 991)

Opinion filed December 8, 1934.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr.,* and *Verne M. Laing,* all of Wichita, for the appellant.

*W. E. Holmes, Mark H. Adams, Howard L. Baker, Charles E. Jones, C. H. Brooks, Willard Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe* and *Wayne Coulson,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to recover damages for injury to

property of plaintiffs caused by pollution of a water well of plaintiffs resulting from leaks in an oil pipe line owned and operated by defendant. Judgment was for plaintiffs. Defendant appeals.

The facts are about as follows: Plaintiffs own a forty-acre farm about two miles east of Wichita. For many years it has been the homestead of plaintiffs and operated as a dairy farm. The water used on the farm came from a well which supplied soft water. It was about forty-five feet deep. There is a public highway running north and south along the west side of the farm. Along the west side of this road defendant had two pipe lines, one a four-inch line and the other a three-inch line. The three-inch line was constructed of secondhand pipe. Oil was carried through these pipes for three or four days at a time and then salt water for about the same period. The petition alleged and the jury found the existence of three different leaks in the pipe line. One was 1,000 feet southwest, one 200 feet west and one 800 feet northwest of the Spencer well. The first leak occurred in 1931, the next in 1932 and the last one in February, 1933. Defendants do not deny that these leaks actually occurred. In February, 1933, plaintiff's well began to show oil, and this condition has continued and grown worse until the water from the well cannot be used for any purpose whatever. Plaintiffs have been compelled to haul water for their stock. The jury found for plaintiffs, awarding them $2,800 for permanent damages to real estate, $100 for damages to live stock and $100 for expenses in hauling water.

Defendant contends there was no proof that the property of plaintiffs was permanently damaged; that there was no competent proof the seepage of oil which plaintiffs claimed to exist came from the pipe line of defendant; and that the answer of the jury to question number four was inconsistent with the general verdict. Defendant argues that for these reasons the demurrer of defendant to the evidence of plaintiffs should have been sustained, and that the motion of defendant for judgment, notwithstanding the general verdict, should have been granted.

Special question number four was as follows:

"If you find, under the evidence, that the defendant deposited or placed crude oil, which was not removed, on or in the ground adjacent to plaintiffs' property at various places, then state the places and direction from plaintiffs' well and the amount at each place. A. Approximately 1,000 feet southwest—undetermined amount.

"Approximately 200 feet west—undetermined amount.

"Approximately 800 feet northwest along highway—undetermined amount."

The argument of defendant is that the finding of "undetermined amount" is analogous to the answer "We do not know" concerning an element of the case necessary to recovery. In the cases where juries have returned such answers it has been held the answer indicated the plaintiff had not sustained the burden of proof required of it and a verdict in his favor could not stand: This question should be considered in connection with the next one. It is as follows:

"Do you find, under the evidence, that oil was found at a depth of approximately nineteen feet under the surface of the earth and that it was found in the highway in front of plaintiffs' house in holes dug 200 feet apart? A. Yes, but it came from pipe-line leak."

So considered, there is no inconsistency in the general verdict and the answers to special questions. It might very well be that the jury did not care to say how much oil escaped at each leak. The important question, however, was whether enough leaked out to reach the source of the water supply of plaintiffs' well. When the jury answered that oil from the pipe line had reached to a depth of nineteen feet in holes dug 200 feet apart in front of plaintiff's house, this amounted to an affirmative answer to that question. The case comes within the rule laid down in *Hinze v. City of Iola,* 92 Kan. 779, 142 Pac. 947. In that case the plaintiff sued and recovered a judgment against the city for injury caused by an electric shock. The jury, in response to a question as to whether the transformer was empty of oil at the time in question, answered, "Don't know," but proceeded to find that it was out of repair on that date, the defect being due to "lack of oil or worn insulation." The following question was asked, "If you find that the transformer was empty of oil or out of repair, state how long it had been in that condition." To this the jury answered, "We don't know." The city argued that the jury's answer to the question was in effect a finding that the time had not been long enough to amount to notice to the city. The court answered this, as follows:

"Hence the answer 'We do not know' to the question how long the transformer had been empty of oil or out of repair cannot as a matter of law be deemed, as counsel suggest, a finding in effect that it had not been long enough to amount to notice to the city. When a jury are asked as to the existence of a fact and answer that they do not know, the logical and legal significance

is that the plaintiff has not proved that such fact exists and therefore, so far as his proof is concerned, it does not exist. . . . But when the question is how long a certain condition existed, the answer 'We don't know' necessarily means, not that such condition did not exist at all or for any certain time, but that the evidence fails to show the duration of such existence."

Here proof of the depositing of any particular amount of oil was not essential. What was essential was proof of sufficient penetration of enough oil to reach the water supply of plaintiffs' well.

Defendant next argues there was no evidence the oil that reached plaintiffs' well came from the leak in defendant's pipe line. It is true that the course of the oil from the pipes of defendant to the water well cannot be traced as clearly as though it flowed on top of the ground. Doctors sometimes administer medicine which coats the intestines so that the functioning of the organ may be observed by means of an X-ray. But here such certainty is not required of us. Our concern is whether the evidence of plaintiffs was sufficient to take the case to the jury. (See *Hall v. Galey*, 126 Kan. 699, 271 Pac. 319.) There was ample evidence that before the leaks in defendant's pipe line the water in plaintiffs' well was clear, sweet and wholesome. Some time subsequent to the occurrence of leaks oil appeared in the well. Defendant complains that there was no evidence the subsurface formation known as the Wellington shale had any fissures or foldings to enable the oil to travel from the pipe line of defendant to the well of the plaintiffs. The fact is that there was evidence of the general characteristic of the Wellington shale in this respect. It is a matter of common knowledge that the source from which a well draws its water is often some distance from the well itself and that water and oil will seep through the earth. Furthermore, the proof was conclusive that the oil found in plaintiffs' well did not come from any other source. The only other pipe line in the vicinity was shown not to have any leaks in it whatever. If the oil had come from the oil-producing sand in the immediate vicinity of the well it would have shown up years before the occurrence of the leaks in defendant's pipe line. The consideration of all these things leads to the conclusion that there was ample evidence to take this case to the jury. (See *Hall v. Galey*, supra; *Daly v. Gipsy Oil Co.*, 133 Kan. 551, 300 Pac. 1099; *Martin v. Shell Petroleum Corp.*, 133 Kan. 124, 299 Pac. 261.)

Defendant next argues that there was no evidence that the damages to real property of plaintiffs was permanent. In this connec-

tion it appears that plaintiffs depended upon this well to furnish water for their stock. They used the place as a dairy farm. They are compelled to haul water for their stock. There was evidence that once the soil through which the well drew its water supply became soaked with oil it would be polluted for a great many years. We hold that all this taken together constitutes sufficient evidence to sustain a verdict for permanent damages.

The judgment of the trial court is affirmed.