No. 31,904

THE STATE OF KANSAS, ex rel. LUCY GRESHAM, *Appellee,* v. JOHN WRIGHT, *Appellant.*

(38 P. 2d 135)

Opinion filed December 8, 1934.

A. M. Ebright and P. K. Smith, both of Wichita, for the appellant.

Roland Boynton, attorney-general, Everett E. Steerman, assistant attorney-general, John W. Wood, county attorney, and James B. Nash, deputy county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a proceeding under the statute to fasten parental responsibility on defendant for the maintenance and education of an illegitimate child born to Lucy Gresham, an unmarried girl twenty-two years old.

To the state's information defendant pleaded not guilty. The cause was tried before a jury. It was shown that the prosecutrix and defendant had resided in Cheney and had attended high school there. When they were about twenty years old they began to indulge in sexual relations together. Later they attended different schools in Wichita, and the prosecutrix began to keep company to some extent with other boys, particularly Farrell Springer, William Kilgore and Clyde Seydell. The child was begotten during the early part of 1932, and it was part of the defense that these persons were frequently with her during that period under circumstances which gave them equal opportunities to have carnal knowledge of her with that enjoyed by defendant. The prosecutrix swore that she never had sexual intercourse with anybody except defendant. She did, however, have a difficult time on cross-examination in attempting to explain the contents of a letter she wrote to defendant under date of March 8, 1932, in which she assured him she was not enciente and that she had almost entirely quit sexual indulgence.

Defendant called Springer, Kilgore and Seydell as witnesses. The record reads:

"Q. You may state your name. A. Farrell Springer.

"Q. Do you know Lucy Gresham? A. Yes, sir.

"Q. Did you know her during January, February and March of 1932? A. Yes, sir.

"Q. Did you ever have any dates with her? A. Several.

"Q. Did you ever have intercourse with her?

"THE COURT: Wait a minute. It is the court's duty to warn you, Mr Springer, that anything you may say can be used against you. A. Yes, sir.

"The Court: Or, if you want to waive your constitutional right, you may proceed with the testimony.

. . . . . . . . . . . . . .

Prosecuting Attorney: "Tell him what his constitutional rights are."

"The Court: Your constitutional rights are that you cannot be compelled to give testimony against yourself or that might incriminate you. A. I refuse to testify then."

Similar incidents occurred in the examination of witnesses Kilgore and Seydell.

The mother of defendant was called as a witness and testified that the prosecutrix had a bad reputation around Cheney. On cross-examination she engaged in a verbal fencing duel with the prosecuting attorney. The trial court admonished her repeatedly to confine her remarks to answering questions. The record, in part, reads:

"Q. Now you say her reputation in the community where she lives is bad. A. I said it was.

. . . . . . . . . . . . . .

"Q. Now then give me the names of the people that say her reputation is bad. A. I said they were the people of Cheney.

"Q. Who are they?

. . . . . . . . . . . . . .

"A. Well, they are their neighbors and people in the town of Cheney.

"The Court: Do you know their names? A. I answered it.

"The Court: Mrs. Wright, you are fined $25, and you will have to pay it now.

[Counsel for Defendant]: "The defendant objects to the statement of the court and the county attorney and the fining of this witness because it is uncalled for and prejudicial, and asks that this jury be discharged and this defendant in this case be dismissed.

"The Court: The motion is overruled. The defendant will take charge of the lady. We will have a few minutes recess."

After the recess the court said to the jury:

"The little incident that took place a while ago will not be considered by you as any evidence of the truth or falsity of the charges in the information; you will not consider that in arriving at your verdict in any manner whatsoever."

The jury returned a verdict that defendant was the father of the child. This was followed by a hearing before the court to determine the amount defendant should be adjudged to pay towards its maintenance and education. This was eventually fixed at $280 in cash and $240 per annum, payable monthly until November 14, 1950, at which time the child, if then living, will be eighteen years old.

Judgment was entered accordingly and defendant was required to give bond in the sum of $2,000 to insure obedience to the judgment with the alternative of imprisonment in the county jail until such security be given, with the proviso that his incarceration in no event should exceed the term of one year.

Defendant appeals, assigning various errors, which will be noted in the order of their presentation. Preliminary thereto his counsel invite this court to discuss the nature of a bastardy case—whether it is civil or criminal; but this subject has been so often treated by this and other courts that it would be a work of supererogation to undertake it anew. (*In re Bolman,* 131 Kan. 593, 596, 598, 382 Pac 790; 7 C. J. 966, 967; 3 R. C. L. 750, 751.)

Error is assigned on the limitation placed upon the cross-examination of the prosecutrix where she was asked:

"Did you leave there [her Wichita boarding house] because you were told to leave as you were having too many boys there to see you?"

The prosecuting attorney's objection to this question was sustained on the ground that it was not proper cross-examination. Mayhap this objection was not good; but the error, if any, was harmless, because antecedent thereto the record reads:

"Q. What was the cause of your leaving there?
(Objection overruled.)
"A. Because the woman told me she was going to California."

The next error urged pertains to a ruling of the court which prevented defendant from showing that his father was worth about $75,000, the object of such testimony being to show a possible motive on the part of prosecutrix for fastening the paternity of her child on this defendant. The court also sustained an objection to a question which was intended to elicit testimony that the father of the prosecutrix had demanded of defendant's father the sum of $3,500, presumably in settlement of his daughter's claim for the support and education of her child. However, this excluded evidence, whose competency is not altogether clear and whose immateriality is rather obvious, was not brought into the record in conformity with the code when the motion for a new trial gave defendant that opportunity, so reversible error does not appear. (Civ. Code, § 307, R. S. 60-3004; *Blankenship v. School District,* 136 Kan. 313, 315, 15 P. 2d 438.)

Defendant's next complaint arises out of the incident where his

mother was fined for contempt of court because of her conduct on the witness stand. Regrettable as such incidents are, it would never do to hold that the refractory conduct of a witness should be ignored by the court because the enforcement of discipline might possibly prejudice the cause on trial before the jury. Indeed, if such prejudice should be thus invoked, who could say whether it operated to the detriment of the one whose cause the refractory witness sought to uphold? In the absence of a clear showing of prejudice (which does not appear in this case) the proper method of dealing with such incidents must necessarily and largely be left to the sound discretion of the trial court. (*State v. Marshall,* 95 Kan. 628, 148 Pac. 675.) In *In re Hanson,* 129 Kan. 597, 283 Pac. 659, it was said:

"Any person in court—attorney, litigant, witness or bystander—whose refractory conduct tends to disturb the decorum requisite for the due administration of justice is guilty of direct contempt of court and may be fined or jailed therefor." (p. 600.)

Defendant's next complaint is based on the fact that in the examination of the three witnesses, Springer, Kilgore and Seydell, where the defendant apparently hoped to elicit the fact that each of them had had sexual relations with the prosecutrix about the time the child was begotten, the trial court of its own motion rescued them from the embarrassment of testifying on that subject. This court is neither disposed to approve the trial court's intrusive ruling on this incident, nor to condemn it as prejudicially erroneous. We have held that in a bastardy proceeding to determine the paternity of an illegitimate child, evidence may properly be received that near the probable date of conception the relatrix associated with a young man other than the defendant under circumstances which offered as much opportunity and as much likelihood of improper conduct with him as with the defendant. (*State, ex rel., v. Creager,* 97 Kan. 334, 155 Pac. 29. See, also, *State v. Gereke,* on rehearing, 74 Kan. 200, 87 Pac. 759; and 7 C. J. 990.) One fair criticism of the trial court's ruling would be that the witnesses were thereby led to infer that if they should give an affirmative answer they would be giving testimony which might furnish the basis of a criminal prosecution against themselves. That, however, would not necessarily follow. The girl was twenty-two years old and unmarried. The young men were also single, apparently. There was no reason to assume that if they had had sexual relations with her, it had occurred under

such circumstances as those denounced under R. S. 21-908 or any other provision of the crimes act. Be that as it may, these three young men were defendant's witnesses. It was their direct testimony which was excluded; what they would have testified to was never brought into the record; consequently no error can be predicated on its exclusion. (*State v. Ball,* 110 Kan. 428, 432, 433, 204 Pac. 701; *State, ex rel., v. Lyons,* 107 Kan. 312, 313, 101 Pac. 281.)

Defendant's next grievance pertains to the failure of the trial court to instruct the jury that they should consider the association of the prosecuting witness with other men at and near the time her child was begotten. Defendant candidly admits that he has no particular fault with the instructions which the court did give, but argues that they should have been supplemented with one covering this defensive feature of the evidence. But we do not find that such an instruction was asked, so prejudicial error cannot be predicated on its omission. (*Hamilton v. Railway Co.,* 95 Kan. 353, 357, 148 Pac. 648; *State v. Harris,* 126 Kan. 710, 712, 271 Pac. 316; *Skaer v. American Nat'l Bank,* 126 Kan. 538, 268 Pac. 801.)

Other omissions from the court's instructions complained of were these:

The court gave no instruction to the effect that the defendant's failure to testify in his own behalf should not be considered by the jury against him, and that the jury should disregard the prosecuting attorney's comments thereon. But such instructions are only pertinent in criminal prosecutions, and would have been out of place in a mere bastardy proceeding. In 7 C. J. 998 it is said:

"It has been held to be competent for the attorney of the prosecutrix to comment, in argument, on defendant's failure to testify, but this has been denied."

While the authority just cited concedes that there are two sides to the rule, in this state, even in criminal cases, the rule forbidding evidential significance or argumentative comment to be based on the fact that defendant refrains from taking the witness stand is not likely to survive another session of our legislature. (3 J. K. B. 14, 15, 20, 46.)

Another contention of defendant is that the verdict was contrary to the evidence and against the weight of the evidence. The first of these points cannot be sustained. The testimony of the prosecutrix was direct and positive that she had carnal relations with defendant at and near the time the child (a normal one) must have been

begotten. That evidence standing alone would be sufficient. (*State, ex rel., v. Lyons,* supra; 7 C. J. 994, 995; 3 R. C. L. 762, 763.) A strong corroborating circumstance was supplied by defendant by the use he made of the letter written by the prosecutrix to him in March, 1932. It is impossible that any woman would write such a letter to any man unless all bars of private decorum had been completely removed between them. Anent the point urged touching the *weight* of the evidence, that matter is not amenable to appellate review except in cases where the determinative evidence adduced at the trial was documentary or otherwise of such a character that its proper probative weight can be as accurately appraised in this court as by the local triers of fact. (*Harrison v. Lyon,* 126 Kan. 705, 271 Pac. 395; *Martin v. Shell Petroleum Corp.,* 133 Kan. 124, 127, 299 Pac. 261.)

Finally, it is urged that the judgment is excessive—$280 in cash and twenty dollars per month until the child attains the age of eighteen years. This judgment will aggregate a lot of money, but this child must be housed, clothed, fed and educated, and since the trial court and jury have determined that defendant is responsible for it, he is the man to foot these necessary expenditures as far as his means and capacity to earn money will permit. It cannot be positively declared by this court that the provision made for this child by this judgment is excessive, although we are inclined to believe that tens of thousands of children born in lawful wedlock are being reared in average Kansas homes for less money.

A painstaking study of this record and of the briefs of counsel do not reveal any prejudicial error which would permit this judgment to be disturbed, and it is therefore affirmed.